DAVID C. SHONKA
Acting General Counsel

KENNETH H. ABBE
Cal. Bar No. 172416; kabbe@ftc.gov
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax: (310) 824-4380

SARAH E. SCHROEDER
Cal. Bar No. 221528; sschroeder@ftc.gov
EMILY COPE BURTON
Cal. Bar No. 221127; eburton@ftc.gov
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5100; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>          v.<br><br>NUTRACLICK, LLC, a limited liability<br>     company, formerly known as<br>     HUNGRY FISH MEDIA, LLC,<br><br>     Defendant. | Case No. CV 16-6819<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, to obtain permanent injunctive relief, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts

or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of Section 4 of ROSCA, 15 U.S.C. § 8403.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a) and 53(b); and Section 5(a) of ROSCA, 15 U.S.C. § 8404(a).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (b)(3), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces ROSCA, 15 U.S.C. §§ 8401 *et seq.*, which prohibits certain methods of negative option marketing on the Internet.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and ROSCA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), and 8404.

## DEFENDANT

6.     Defendant NutraClick, LLC ("NutraClick") is a Delaware limited liability company with its principal place of business at 24 School Street, 4th Floor, Boston, MA, 02108.  NutraClick was formerly known as Hungry Fish Media, LLC.  NutraClick transacts or has transacted business in this district and throughout the United States.

## COMMERCE

7.    At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

8.    Since 2009, Defendant has used tactics that violate the FTC Act and ROSCA to enroll consumers in membership programs for its nutritional supplements and beauty products.

9.    On its websites, Defendant purports to offer consumers "free" product samples, but fails to disclose, or fails to disclose adequately, that by ordering a sample consumers  are enrolled in Defendant's membership program and will incur a monthly fee until they call Defendant to cancel their membership.  The recurring membership fee ranges from $29.99 to $79.99 depending on the product. Consumers must cancel their membership within a 18-day trial period to avoid future charges.  Although Defendant's websites contain statements about the recurring charge, those statements are not clear and conspicuous.  Accordingly, many consumers are led to believe that Defendant offers consumers "free" product samples with no further payment obligation.

10.    Defendant has caused tens of millions of dollars in injury to consumers through the sale of its membership programs.  At least 70,000 consumers have complained about Defendant's business practices to their bank, credit card company, a law enforcement agency, or the Better Business Bureau.

### Defendant's Products

11.    Defendant sells a range of nutritional supplements and beauty products, including Force Factor, Peak Life, ProBioSlim, SomnaPure, VolcaNO, and Stages of Beauty.  Defendant sells its products directly to consumers through its websites and in brick-and-mortar retail stores such as Walgreens, Walmart, CVS, and GNC.

Complaint

<u>Defendant's Website Sign-Up Process</u>

14.    Defendant markets its products through online advertisements, email, and direct mail solicitations.  Defendant's ads and email solicitations encourage consumers to "CLICK HERE TO GET YOUR FREE SAMPLE" or suggest that the product is "Only 99¢."  The links in the email and online advertisements direct consumers to an online sign-up path controlled by Defendant.

15.    <u>Landing Page</u>:  Consumers who follow the links in Defendant's advertisements arrive at one of a number of websites, including forcefactor.com, peaklife.com, stagesofbeauty.com, femmefactor.com, and probioslim.com.  The first webpage consumers see upon arrival at any of Defendant's websites, is the landing page ("Landing Page").  The Landing Page contains information about Defendant's products.  The focal point of the Landing Page is a large, a brightly colored button stating "FREE SAMPLE" or similar language.

16.    <u>Step 1 – "See if you qualify"</u>:  Consumers who click the "FREE SAMPLE" or similar button on the Landing Page are directed to a page that contains more information about the specific product the consumer is interested in.  The page also requests the consumer's personal information, including their first name, gender, age, and zip code ("Qualification Page").  The Qualification Page states that Defendant needs this information to determine whether the consumer qualifies to receive a product sample.  The Qualification Page also urges consumers to act quickly because supplies are limited.  A large, brightly colored button labeled "CLAIM YOUR SAMPLE" or similar language is directly below the area where consumers enter their personal information.

17.    <u>Step 2 – "Answer a few questions"</u>:  Consumers who submit their information on the Qualification Page are directed to a webpage that requests the consumer's shipping information, including the consumer's full name, address, phone number, and email address ("Shipment Page").  The page also invites consumers to answer questions about their sleeping habits and other health issues.

The page states, in bold and italics, "FREE SAMPLE, PAY ONLY SHIPPING AND HANDLING," or similar language.

18.   Step 3 – "Complete Your Sample Order": Consumers who enter their information on the Shipment Page are directed to a page requesting their credit card information ("Payments Page").  The top of the page states, in large type, "YOU'RE ALMOST DONE [consumer's name] Just pay for shipping and handling below," "Pay For S & H Below," or similar language.  The right side of the page contains a box that has fields for consumers to enter their credit card information.  The left side of page contains photos of Defendant's products and a dense paragraph of terms and conditions.  Many consumers provided their credit card information to Defendant on the mistaken belief that Defendant would charge them only $2.99 to $4.99 for shipping and handling for a free sample.

19.   In numerous instances, consumers did not know they had been enrolled in Defendant's membership program until they discovered a charge on their credit card statement.  Some consumers did not notice the recurring charge for several billing cycles.

Defendant's Purported Disclosures

20.   Defendant's websites have contained purported disclosures about recurring charges associated with its membership programs, none of which are clear and conspicuous.   Defendant's websites feature a small gray bar at the bottom of certain webpages that contains hyperlinks titled "Terms," "Refund and Return Policy," "Privacy Policy," "Copyright Info," and "Contact Us."  A pop-up box appears describing the membership program and recurring monthly fees only when a consumer affirmatively clicks on the "Terms" hyperlink.  The Defendant's online sign-up flow does not require consumers to click on this link in order to place an order.

21.   Defendant's second purported disclosure is on the Payments Page. (*see* Exhibit A).  The left-hand side of the Payment Page contains graphics

showing Defendant's products, security firm logos, information about product availability in stores, and a box for consumers to enter their credit card information.  The lower left-hand portion of the page also features a long paragraph in small type that describes Defendant's "Terms & Conditions." Approximately half-way through the terms and conditions paragraph Defendant describes the recurring charge and cancellation process.  The terms and conditions paragraph is in small print and away from the credit card field.  Consumers' eyes are not drawn to the dense type, but instead to the credit card field and large button below the credit card field that states, "RUSH MY SAMPLE."

22.    In fall 2015, Defendant added two purported disclosures to the Payments Page.  First, it included language near the top of the Payments Page that describes the recurring monthly charge and cancellation methods.  However, this disclosure is next to a large seal that states "Money-Back Guarantee."   The first two sentences of the disclosure relate to shipping and product satisfaction, not the recurring charge.  The second disclosure Defendant added is a checkbox below the payment information that states "I understand and agree to the terms and conditions to the left."  However, the check box does not contain any information about the recurring charge.  Consumers who called Defendant's customer service center to cancel their membership told Defendant's agents that they did not see the new disclosures and did not know they were enrolled in a monthly membership program.  Exhibit B is materially similar to the Payments Page that consumers saw after fall 2015.

## VIOLATIONS OF THE FTC ACT

23.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

24.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## Count 1

### Failure to Adequately Disclose Automatic Renewal Terms

25.     Through the means described in Paragraphs 12 to 22 above, Defendant has represented, expressly or by implication, that consumers could obtain free samples of its products for a nominal shipping and handling fee.

26.     In numerous instances in which Defendant has made the representation set forth in Paragraph 25, above, Defendant has failed to disclose, or failed to disclose adequately, to consumers the material terms and conditions related to  the offer, including:

       a.     That Defendant would automatically enroll consumers in a negative option continuity plan with additional charges;

       b.     That consumers must affirmatively cancel the negative option continuity plan before the end of a trial period to avoid additional charges;

       c.     That Defendant would use consumers' credit card information to charge consumers monthly for the negative option continuity plan;

       d.     The costs associated with the negative option continuity plan; and

       e.     The means consumers must use to cancel the negative option continuity plan to avoid additional charges.

27.     Defendant's failure to disclose, or disclose adequately, the material information described in Paragraph 26, above, in light of the representation described in Paragraph 25, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **VIOLATIONS OF THE RESTORE ONLINE SHOPPERS'**
## **CONFIDENCE ACT**

28.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401 *et seq.*, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

29.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller (1) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information, (2) obtains the consumer's express informed consent before making the charge, and (3) provides a simple mechanism to stop recurring charges.  *See* 15 U.S.C. § 8403.

30.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

31.     As described in Paragraphs 12 to 22 above, Defendant has advertised and sold Defendant's membership program to consumers through a negative option feature as defined by the TSR.  *See* 16 C.F.R. § 310.2(w).

32.     Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## Count 2

### Failure to Disclose All Material Terms

33.     In numerous instances, Defendant has charged or attempted to charge consumers for Defendant's membership program through a negative option feature while failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information.

34.     Defendant's acts or practices, as described in Paragraph 33, above, constitute a violation of Section 4(1) of ROSCA, 15 U.S.C. § 8403(1), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## Count 3

### Failure to Obtain Consumers' Express Informed Consent

35.     In numerous instances, Defendant has charged or attempted to charge consumers for Defendant's membership program through a negative option feature while failing to obtain consumers' express informed consent before charging their credit card, debit card, bank account, or other financial account for Defendant's membership program.

36.     Defendant's acts or practices, as described in Paragraph 35, above, constitute a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## CONSUMER INJURY

37.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act and ROSCA.  In addition, Defendant has been unjustly enriched as a result of its unlawful acts or practices. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

1

## THIS COURT'S POWER TO GRANT RELIEF

2      38.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court

3   to grant injunctive and such other relief as the Court may deem appropriate to halt

4   and redress violations of any provision of law enforced by the FTC.  The Court, in

5   the exercise of its equitable jurisdiction, may award ancillary relief, including

6   restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to

7   prevent and remedy any violation of any provision of law enforced by the FTC.

8

## PRAYER FOR RELIEF

9      Wherefore, Plaintiff FTC, pursuant to Sections 13(b) of the FTC Act, 15

10   U.S.C. § 53(b), and Section 5 of ROSCA, 15 U.S.C. § 8404, and the Court's own

11   equitable powers, requests that the Court:

12      A.    Enter a permanent injunction to prevent future violations of the FTC

13   Act and ROSCA by Defendant;

14      B.    Award such relief as the Court finds necessary to redress injury to

15   consumers resulting from Defendant's violations of the FTC Act and ROSCA,

16   including but not limited to restitution, the refund of monies paid, and the

17   disgorgement of ill-gotten monies; and

18      C.    Award Plaintiffs the costs of bringing this action, as well as such other

19   and additional relief as the Court may determine to be just and proper.

20

21                              Respectfully submitted,

22

23                              DAVID C. SHONKA
                                Acting General Counsel
24

25   Dated: _Sept. 12_____, 2016

26                              KENNETH H. ABBE
                                SARAH E. SCHROEDER
27                              EMILY COPE BURTON
                                Attorneys for Plaintiff
28                              FEDERAL TRADE COMMISSION