DAVID C. SHONKA
Acting General Counsel

KENNETH H. ABBE
Cal. Bar No. 172416; kabbe@ftc.gov
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax: (310) 824-4380

SARAH E. SCHROEDER
Cal. Bar No. 221528; sschroeder@ftc.gov
EMILY COPE BURTON
Cal. Bar No. 221127; eburton@ftc.gov
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5100; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>       v.<br><br>NUTRACLICK, LLC, a limited liability<br>     company, formerly known as<br>     HUNGRY FISH MEDIA, LLC,<br><br>    Defendant. | Case No. <u>CV 16-06819-DM</u>G-JPR<br><br>**STIPULATION TO ENTRY OF ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404.  The Commission and Defendant have stipulated to the entry of a Stipulated Order for Permanent Injunction and

Monetary Relief ("Order"), lodged concurrently with this Stipulation, with the following terms and provisions:

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.    This Court has jurisdiction over this matter.

2.    The Complaint charges that Defendant participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 4 of ROSCA, 15 U.S.C. § 8403, in the marketing of its negative option memberships for nutritional supplements and beauty products.

3.    Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.    Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.    Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.    **"Billing Information"** means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

B.    **"Charge"** or **"charging"** means causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

Page 2

C.     "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.  A disclosure is not Clear and Conspicuous if a consumer must take any action, such as clicking on a hyperlink or hovering over an icon, to see it.

5.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to face communications.

Page 3

7.  The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.  When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.  "**Close Proximity**" means immediately adjacent to the triggering representation. In the case of advertisements disseminated verbally or through audible means, the disclosure shall be made as soon as practicable after the triggering representation.

E.  "**Defendant**" means **NutraClick, LLC**, formerly known as Hungry Fish Media, LLC, and its successors and assigns.

F.  "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

## ORDER

## I. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting, expressly or by implication:

A.  The cost or price of any good or service;

B.  That a good or service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on

the part of the recipient of the offer to affirmatively act in order to avoid a charge, including where a charge will be assessed pursuant to the offer unless the consumer takes affirmative action to cancel;

C.     That consumers can obtain a good or service for a minimal processing, service, or administrative fee with no further obligation;

D.     That consumers can obtain a good or service for a minimal shipping or handling fee with no further obligation;

E.     The purpose for which a consumer's payment information will be used;

F.     The timing or manner of any Charge or bill (including but not limited to the date of the Charge and whether it will be a credit card Charge or checking account debit);

G.     The length of any trial period before the consumer is Charged or billed;

H.     That a transaction has been authorized by a consumer; or

I.     Any other fact material to consumers concerning any good or service, such as qualifications to participate in a program, limited supply of a good or service, the total costs, any material restrictions, limitations, or conditions, or any other material aspect of a good or service's performance, efficacy, nature, or central characteristics.

## II.  REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

Page 5

  A.  Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously and in Close Proximity to the consumers' provision of Billing Information:

    1.  That the consumer will be Charged for the good or service, or that those Charges will increase after the trial period ends, and, if applicable, that the Charges will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such Charges;

    2.  The amount (or range of costs) the consumer will be Charged or billed and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop them;

    3.  The deadline (by date or frequency) by which the consumer must act in order to stop all recurring Charges;

    4.  The name of the seller or provider of the good or service;

    5.  A description of the good or service; and

    6.  The mechanism to stop any recurring Charges.

  B.  For any transaction involving a sale of a good or service to a consumer through a Negative Option Feature, within ten (10) days after the date of the sale, failing to send the consumer written confirmation of the transaction, either by email or first class mail, Clearly and Conspicuously identified as such in the email subject line or on the outside of the envelope.  Such written confirmation shall include Clear and Conspicuous disclosure of all the information required by Section III.A.

### III.  OBTAINING EXPRESS INFORMED CONSENT

  IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using Billing Information to obtain payment from a consumer, unless, prior to using such Billing Information to obtain payment, Defendant obtains the express informed consent of the consumer relating to the Negative Option Feature.  Express informed consent shall consist of:

      A.    For all written offers with a Negative Option Feature (including over the Internet or other web-based applications or services), a consumer's express informed consent shall be obtained, prior to Defendant charging the consumer, through a check box, signature, or other substantially similar method, that the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer.  Defendant shall disclose Clearly and Conspicuously and in Close Proximity to such check box, signature, or substantially similar method of affirmative consent, only the following (with no additional information):

          1.    That the consumer will be Charged for the good or service, or that those Charges will increase, after the trial period ends, and, if applicable, that the Charges will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such Charges;

          2.    The amount (or range of costs) the consumer will be Charged or billed and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop them; and

          3.    The deadline (by date or frequency) by which the consumer must act in order to stop all recurring Charges.

      B.    For all oral offers including a Negative Option Feature, Defendant

shall, in addition to disclosing the information identified in Section III.A., and prior to obtaining any Billing Information from a consumer, obtain affirmative and unambiguous oral confirmation that the consumer:

      1.    Consents to authorizing payment for any goods or services;

      2.    Understands that the transaction includes a Negative Option Feature; and

      3.    Understands the specific affirmative steps the consumer must take to prevent further Charges.

Defendant shall maintain for two (2) years from the date of each transaction a voice recording of the entire transaction, including the prescribed statements set out in Section III.A.  Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV.  SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

IT IS FURTHER ORDERED Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide a simple mechanism for a consumer to:  (1) avoid being Charged, or Charged an increased amount, for the good or service; and (2) immediately stop any recurring Charges.  Such mechanism must not be difficult, costly, confusing, or time consuming, and it must be at least as simple as the mechanism the consumer used to initiate the recurring Charge.

## V.  PROHIBITIONS ON VIOLATING THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

IT IS FURTHER ORDERED Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from violating the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, a copy of which is attached.

## VI.  MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of three hundred and fifty thousand dollars ($350,000) is entered in favor of the Commission against the Defendant as equitable monetary relief.

B.      Defendant is ordered to pay to the Commission three hundred and fifty thousand dollars ($350,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VII.  ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or

monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendant acknowledges that its Taxpayer Identification Number, which Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VIII.  CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promotion, offering for sale, or sale of any good or service with a Negative Option Feature must provide

sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## IX.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtains acknowledgments of receipt of this Order:

A.      Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Defendant must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of

contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing, and sales; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 15 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

    1.      Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  *FTC v. NutraClick, LLC*.

## XI.  RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 15 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

## XII.  COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, including failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

///
///
///
///
///
///
///
///

1    **SO STIPULATED AND AGREED:**

2    **FOR PLAINTIFF:**

3

4    DAVID C. SHONKA
     Acting General Counsel

5

6

7    KENNETH H. ABBE
     SARAH E. SCHROEDER
8    EMILY COPE BURTON
9    Attorneys for Plaintiff Federal Trade Commission

10

11   **FOR DEFENDANT:**

12

13

14   JEFFREY D. KNOWLES, ESQ.
15   RODGER A. COLAIZZI, ESQ.
     Venable LLP
16   Attorney for Defendant NutraClick, LLC

17

18   **DEFENDANT NUTRACLICK, LLC**

19

20

21   DANIEL WALLACE, CEO

22

23

24

25

26

27

28

                              Page 15

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

DAVID C. SHONKA
Acting General Counsel

_____
KENNETH H. ABBE
SARAH E. SCHROEDER
EMILY COPE BURTON
Attorneys for Plaintiff Federal Trade Commission

**FOR DEFENDANT:**

_____
JEFFREY D. KNOWLES, ESQ.
RODGER A. COLAIZZI, ESQ.
LEONARD L. GORDON, ESQ.
ELLEN TRAUPMAN BERGE, ESQ.
Venable LLP
Attorneys for Defendant NutraClick, LLC

**DEFENDANT NUTRACLICK, LLC**

_____
DANIEL WALLACE, CEO

Page 15



S. 3386

# One Hundred Eleventh Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the fifth day of January, two thousand and ten*

## An Act

To protect consumers from certain aggressive sales tactics on the Internet.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Restore Online Shoppers' Confidence Act".

**SEC. 2. FINDINGS; DECLARATION OF POLICY.**

The Congress finds the following:

(1) The Internet has become an important channel of commerce in the United States, accounting for billions of dollars in retail sales every year. Over half of all American adults have now either made an online purchase or an online travel reservation.

(2) Consumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business.

(3) An investigation by the Senate Committee on Commerce, Science, and Transportation found abundant evidence that the aggressive sales tactics many companies use against their online customers have undermined consumer confidence in the Internet and thereby harmed the American economy.

(4) The Committee showed that, in exchange for "bounties" and other payments, hundreds of reputable online retailers and websites shared their customers' billing information, including credit card and debit card numbers, with third party sellers through a process known as "data pass". These third party sellers in turn used aggressive, misleading sales tactics to charge millions of American consumers for membership clubs the consumers did not want.

(5) Third party sellers offered membership clubs to consumers as they were in the process of completing their initial transactions on hundreds of websites. These third party "post-transaction" offers were designed to make consumers think the offers were part of the initial purchase, rather than a new transaction with a new seller.

(6) Third party sellers charged millions of consumers for membership clubs without ever obtaining consumers' billing information, including their credit or debit card information, directly from the consumers. Because third party sellers

S. 3386—2

acquired consumers' billing information from the initial merchant through "data pass", millions of consumers were unaware they had been enrolled in membership clubs.

(7) The use of a "data pass" process defied consumers' expectations that they could only be charged for a good or a service if they submitted their billing information, including their complete credit or debit card numbers.

(8) Third party sellers used a free trial period to enroll members, after which they periodically charged consumers until consumers affirmatively canceled the memberships. This use of "free-to-pay conversion" and "negative option" sales took advantage of consumers' expectations that they would have an opportunity to accept or reject the membership club offer at the end of the trial period.

## SEC. 3. PROHIBITIONS AGAINST CERTAIN UNFAIR AND DECEPTIVE INTERNET SALES PRACTICES.

(a) REQUIREMENTS FOR CERTAIN INTERNET-BASED SALES.—It shall be unlawful for any post-transaction third party seller to charge or attempt to charge any consumer's credit card, debit card, bank account, or other financial account for any good or service sold in a transaction effected on the Internet, unless—

(1) before obtaining the consumer's billing information, the post-transaction third party seller has clearly and conspicuously disclosed to the consumer all material terms of the transaction, including—

(A) a description of the goods or services being offered;

(B) the fact that the post-transaction third party seller is not affiliated with the initial merchant, which may include disclosure of the name of the post-transaction third party in a manner that clearly differentiates the post-transaction third party seller from the initial merchant; and

(C) the cost of such goods or services; and

(2) the post-transaction third party seller has received the express informed consent for the charge from the consumer whose credit card, debit card, bank account, or other financial account will be charged by—

(A) obtaining from the consumer—

(i) the full account number of the account to be charged; and

(ii) the consumer's name and address and a means to contact the consumer; and

(B) requiring the consumer to perform an additional affirmative action, such as clicking on a confirmation button or checking a box that indicates the consumer's consent to be charged the amount disclosed.

(b) PROHIBITION ON DATA-PASS USED TO FACILITATE CERTAIN DECEPTIVE INTERNET SALES TRANSACTIONS.—It shall be unlawful for an initial merchant to disclose a credit card, debit card, bank account, or other financial account number, or to disclose other billing information that is used to charge a customer of the initial merchant, to any post-transaction third party seller for use in an Internet-based sale of any goods or services from that post-transaction third party seller.

S. 3386—3

(c) APPLICATION WITH OTHER LAW.—Nothing in this Act shall
be construed to supersede, modify, or otherwise affect the require-
ments of the Electronic Funds Transfer Act (15 U.S.C. 1693 et
seq.) or any regulation promulgated thereunder.

(d) DEFINITIONS.—In this section:

(1) INITIAL MERCHANT.—The term "initial merchant" means
a person that has obtained a consumer's billing information
directly from the consumer through an Internet transaction
initiated by the consumer.

(2) POST-TRANSACTION THIRD PARTY SELLER.—The term
"post-transaction third party seller" means a person that—

(A) sells, or offers for sale, any good or service on
the Internet;

(B) solicits the purchase of such goods or services on
the Internet through an initial merchant after the con-
sumer has initiated a transaction with the initial merchant;
and

(C) is not—

(i) the initial merchant;

(ii) a subsidiary or corporate affiliate of the initial
merchant; or

(iii) a successor of an entity described in clause
(i) or (ii).

## SEC. 4. NEGATIVE OPTION MARKETING ON THE INTERNET.

It shall be unlawful for any person to charge or attempt to
charge any consumer for any goods or services sold in a transaction
effected on the Internet through a negative option feature (as
defined in the Federal Trade Commission's Telemarketing Sales
Rule in part 310 of title 16, Code of Federal Regulations), unless
the person—

(1) provides text that clearly and conspicuously discloses
all material terms of the transaction before obtaining the con-
sumer's billing information;

(2) obtains a consumer's express informed consent before
charging the consumer's credit card, debit card, bank account,
or other financial account for products or services through
such transaction; and

(3) provides simple mechanisms for a consumer to stop
recurring charges from being placed on the consumer's credit
card, debit card, bank account, or other financial account.

## SEC. 5. ENFORCEMENT BY FEDERAL TRADE COMMISSION.

(a) IN GENERAL.—Violation of this Act or any regulation pre-
scribed under this Act shall be treated as a violation of a rule
under section 18 of the Federal Trade Commission Act (15 U.S.C.
57a) regarding unfair or deceptive acts or practices. The Federal
Trade Commission shall enforce this Act in the same manner,
by the same means, and with the same jurisdiction, powers, and
duties as though all applicable terms and provisions of the Federal
Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated
into and made a part of this Act.

(b) PENALTIES.—Any person who violates this Act or any regula-
tion prescribed under this Act shall be subject to the penalties
and entitled to the privileges and immunities provided in the Fed-
eral Trade Commission Act as though all applicable terms and
provisions of the Federal Trade Commission Act were incorporated
in and made part of this Act.

Attachment A

S. 3386—4

(c) AUTHORITY PRESERVED.—Nothing in this section shall be construed to limit the authority of the Commission under any other provision of law.

**SEC. 6. ENFORCEMENT BY STATE ATTORNEYS GENERAL.**

(a) RIGHT OF ACTION.—Except as provided in subsection (e), the attorney general of a State, or other authorized State officer, alleging a violation of this Act or any regulation issued under this Act that affects or may affect such State or its residents may bring an action on behalf of the residents of the State in any United States district court for the district in which the defendant is found, resides, or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code, to obtain appropriate injunctive relief.

(b) NOTICE TO COMMISSION REQUIRED.—A State shall provide prior written notice to the Federal Trade Commission of any civil action under subsection (a) together with a copy of its complaint, except that if it is not feasible for the State to provide such prior notice, the State shall provide such notice immediately upon instituting such action.

(c) INTERVENTION BY THE COMMISSION.—The Commission may intervene in such civil action and upon intervening—

(1) be heard on all matters arising in such civil action; and

(2) file petitions for appeal of a decision in such civil action.

(d) CONSTRUCTION.—Nothing in this section shall be construed—

(1) to prevent the attorney general of a State, or other authorized State officer, from exercising the powers conferred on the attorney general, or other authorized State officer, by the laws of such State; or

(2) to prohibit the attorney general of a State, or other authorized State officer, from proceeding in State or Federal court on the basis of an alleged violation of any civil or criminal statute of that State.

(e) LIMITATION.—No separate suit shall be brought under this section if, at the time the suit is brought, the same alleged violation is the subject of a pending action by the Federal Trade Commission or the United States under this Act.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*